IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**RENEE COX,**                                            Civil No. 09-1415-CL

                    Plaintiff

            v.                                           **FINDINGS AND**
                                                         **RECOMMENDATION**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

                    Defendant.

CLARKE, Magistrate Judge:

Plaintiff Renee Cox ("Cox") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be reversed and remanded for further proceedings.

///

///

///

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1964, Cox applied for benefits on June 20, 2006. Tr. 120, 125, 129.[1] She alleges disability since May 5, 2006 (*id.*), due to tendinitis and carpal tunnel syndrome in both arms. Tr. 178. The Commissioner denied these applications initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on June 30, 2009. Tr. 24-61. The ALJ subsequently found Cox not disabled on September 2, 2009. Tr. 9-23. The Appeals Council accepted additional evidence into the record, but declined review of the matter on October 2, 2009 (Tr. 1-5), and Cox now appeals to this court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on September 7, 2010 (Docket # 13).

impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416/920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform his past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

The ALJ found Cox's right arm epicondylitis and depression "severe" at step two in the

3 - FINDINGS AND RECOMMENDATION

sequential proceedings (Tr. 11) but found that these impairments did not meet or equal an impairment "listed" in the Commissioner's regulations at step three. Tr. 12. The ALJ found that Cox retained the following RFC to perform light work, with the following limitations:

> She has limited use of her right upper extremity; she cannot do any overhead reaching, lifting, or carrying with her right arm; she can occasionally handle and finger with her right hand; she can use her right hand as a helper-hand to provide support for things in her left hand; she can understand, remember and carry out short simple instructions; she can have superficial interactions with the general public and coworkers. Tr. 14.

The ALJ found Cox unable to perform her past relevant work, but concluded she could perform work in the national economy at step five in the sequential proceedings. Tr. 21. The ALJ consequently found Cox not disabled. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see* also *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see* also *Batson*, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## ANALYSIS

Cox asserts that the ALJ improperly assessed (1) the opinions of numerous treating and examining medical providers; (2) the lay testimony; (3) evidence under the Commissioner's Administrative Ruling SSR 96-8p; and (4) evidence pertaining to the vocational expert's testimony. Cox consequently asserts that the ALJ made improper findings at step five in the sequential proceedings, and argues that the ALJ should have found her disabled.

## I.    Medical Source Statements

Cox challenges the ALJ's evaluation of three physician opinions pertaining to her right arm tendinitis impairment, as well as the opinion of a treating counselor and evaluating psychologist. The court sequentially addresses treating and examining medical source opinions.

### A.    Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an

5 - FINDINGS AND RECOMMENDATION

examining physician's opinion. *Id.* at 830. The ALJ may reject physician opinions that are "brief,

conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211,

1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute substantial evidence

when it contradicts the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

## B.    Treating Source Opinions

### 1.    Treating Physician Dr. Davies

Cox asserts that the ALJ improperly evaluated the opinion of treating physician Laura Davies,

M.D. Pl.'s Opening Br. 27.

Dr. Davies wrote a letter to the record on November 22, 2006. Tr. 486. It reads, in entirety:

> [Cox] is followed in my rheumatology clinic for chronic lateral
> epicondylitis, bilateral hand arthralgias, bilateral subdeltoid calcific
> bursitis, and bilateral rotator cuff tendinitis. These problems cause
> chronic pain throughout her hands, arms, and shoulders. She has also
> been diagnosed with depression, costochondritis, and hemorrhoids.
> Tr. 486.

The ALJ discussed this letter, and recited its contents, noting that a treating physician's

opinion is usually given significant weight. Tr. 20. The ALJ subsequently noted that the record

contained no treatment notes, and that Dr. Davis' opinion was "quite conclusory, providing no

explanation of the evidence relied on its formation." *Id.*

The record before this court does not contain treatment notes from Dr. Davies. The ALJ may

reject physician opinions that are brief, conclusory, and inadequately supported by clinical notes or

findings. *Bayliss*, 427 F.3d at 1216. The ALJ's rejection of Dr. Davies' letter was appropriately

based upon this standard and should be affirmed.

Cox now asserts that the ALJ should have developed the record regarding Dr. Davies'

6 - FINDINGS AND RECOMMENDATION

opinion. Pl.'s Opening Br. 27. The ALJ has a duty to develop the record when the claimant's onset date is ambiguous, *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998), or when the record is too inadequate for the Commissioner to make a proper disability determination. 20 C.F.R. §§ 404.1513(e); 416.913(e); *Bayliss*, 427 F.3d at 1217. The record here is neither ambiguous nor inadequate. Further, Cox bears the burden of providing evidence establishing disability. 20 C.F.R. §§ 404.1512(a); 416.912(a); *Tackett*, 180 F.3d at 1098. Cox did not submit Dr. Davies' treatment notes to the record. Cox presently fails to argue that ambiguity arises in the record, much less establish an ambiguity necessitating development of the record. Cox's argument that the ALJ should have developed the record regarding Dr. Davies' opinion should be rejected.

### 2. Counselor Mark Schorr, L.P.C.

Cox asserts that the ALJ improperly rejected the opinion of her therapist, Mark Schorr, Licensed Professional Counselor. Pl.'s Opening Br. 24.

Schorr completed forms submitted by Cox's counsel to the record on September 14, 2007 (Tr. 520-27), and April 1, 2008. Tr. 528-35. Schorr cited diagnoses of bipolar disorder, and borderline personality disorder. Tr. 528. He also stated that Cox "may have schizoaffective disorder," and endorsed various limitations associated with performing work activity over the course of an eight hour day. Tr. 523, 531.

The ALJ discussed these forms, and assigned them "little" weight. The ALJ reasoned that Schorr is not an acceptable medical source under the Commissioner's regulations. Tr. 19.

The Commissioner's regulations explain that a licensed professional counselor is an "other" medical source. 20 C.F.R. §§ 404.1508(d); 416.908(d). As such, Schorr's opinion is not entitled

to the weight accorded a medical source under the Commissioner's regulations. *Id.* It is relevant to the extent it describes Cox's symptoms and functionality. *Id.* In evaluating "other" source opinions, the ALJ may consider how long the source has known the claimant, how frequently the source has seen the claimant, how consistent his opinion is with other evidence, the "degree to which the source presents relevant evidence" in support of his opinion, how well the source explains his opinions, and any expertise or specialty of the "other" source. SSR 06-03p at \*4 (*available at* 2006 WL 2329939).

The record contains no treatment notes from Schorr documenting Schorr's observations. Cox's counsel's letter to Schorr in fact stated, in bold and italicized print, "Please DO NOT send medical records unless specifically requested." Tr. 520, 528 (emphasis original). Because the record contains no treatment notes for either the ALJ or this court to review, Cox does not now establish error regarding the ALJ's assessment of Schorr's observations.

The ALJ also found Schorr's opinions inconsistent with opinions rendered by acceptable medical sources. Tr. 19. As noted, this is an appropriate reason to reject an opinion of an "other" source. SSR 06-3p at \* 4 (*available at* 2006 WL 2329930). The ALJ's previous discussion relied upon Drs. Kolilis and Spendel (Tr. 17-18), who did not support Schorr's bipolar diagnosis. Tr. 452, 515. The ALJ properly discounted Schorr's opinion for this reason also.

## C. Examining Source Opinions

### 1. Examining Physician Leslie King, M.D.

Cox asserts that the ALJ improperly found the opinion of examining physician Leslie King, M.D., unsupported by substantial evidence, and failed to provide appropriate reasons for rejecting her opinion. Pl.'s Opening Br. 26.

Dr. King examined Cox for Disability Determination Services ("DDS")[2] on October 17, 2006. Tr. 454-58. She assessed chronic right elbow epicondylitis ("tennis elbow"), and chronic left shoulder rotator cuff strain "and/or" bursitis. Tr. 457. Dr. King stated that Cox could stand, walk, or sit for eight hours in an eight-hour day, without restrictions. Tr. 457. Regarding lifting restrictions, Dr. King wrote, "The claimant could lift and carry 10 pounds only occasionally, and would be limited by her subjective complaints of pain, as this is what limited her at work and from returning to work in the past." *Id.* Dr. King also stated that Cox had no postural limitations, but had "significant limitations on fine motor and manipulative functions involving the upper extremities bilaterally." Tr. 457.

The ALJ first assigned Dr. King's opinion "little weight" because Dr. King "apparently accepted [Cox's] subjective complaints as true." Tr. 20. The ALJ may reject a physician's opinion predicated upon reports of a claimant properly found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ presently found Cox not credible (Tr. 21), and Cox does not challenge this finding. The ALJ's findings pertaining to Cox's credibility and Dr. King's opinion should therefore be affirmed.

The ALJ also found Dr. King's limitations inconsistent with the record as a whole. Tr. 20. Dr. King limited Cox to lifting less than ten pounds. No other treating or examining physician limited Cox to lifting less than ten pounds; the record reflects that she was restricted to unspecified "light" work and lifting no more than twenty pounds. Tr. 395, 412, 414. The ALJ's finding that Dr.

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration. 20 C.F.R. §§ 404.1503; 416.903.

King's opinion is inconsistent with the record is based upon the record and should therefore be affirmed. Dr. King's remaining limitations addressed Cox's use of her hands (Tr. 457), which the ALJ included in his RFC assessment. Tr. 14. Cox therefore does not establish error regarding these limitations.

### 2. Examining Physician John Guitteau, M.D.

Cox asserts that the ALJ's findings regarding John Guitteau, M.D., are not supported by the record, and that the ALJ failed to provide appropriate reasons for rejecting Dr. Guitteau's opinion. Pl.'s Opening Br. 26.

Dr. Guitteau twice examined Cox in conjunction with her worker's compensation claim. Tr. 407. He assessed right lateral epicondylitis ("tennis elbow") on June 9, 2004, and July 13, 2004. Tr. 407-08. On both dates he released Cox for modified work duty. *Id.* On June 9, 2003, Dr. Guitteau indicated that Cox had limited use of her right hand and should not lift over fifteen pounds. Tr. 408. On July 13, 2004, Dr. Guitteau indicated that Cox had limited use of her right hand, arm, and elbow, should avoid forceful gripping, and should not lift over ten pounds. Tr. 407. Dr. Guitteau did not explicitly indicate how long he expected these restrictions to last, but each form contains a follow-up appointment date, suggesting that the opinion related to the interim period before the next appointment.

The ALJ noted Dr. Guitteau's opinion, and found it "generally consistent" with Cox's RFC. Tr. 19. The ALJ's RFC restricted Cox from overhead reaching, lifting, or carrying with her right arm, with occasional handling and fingering of the right hand and use of that hand as a "helper" only. Tr. 14. This analysis is consistent with Dr. Guitteau's restrictions. Cox therefore fails to show that

the ALJ erred regarding Dr. Guitteau's opinion.

### 3.    Examining Psychologist Duane Kolilis, Ph.D.

Cox also asserts that the ALJ improperly assessed "significant weight" to the opinion of examining psychologist Duane Kolilis, Ph.D. Pl.'s Opening Br. 22.

Dr. Kolilis evaluated Cox for DDS on October 10, 2006. Tr. 447-52. Dr. Kolilis performed a clinical interview and evaluation. *Id.* He noted throughout that Cox was an inconsistent historian, and found her responses "guarded, evasive, vague, and sometimes contradictory." Tr. 451. He also stated, "It is this examiner's opinion that her efforts on short-term memory tasks were blatantly facetious, and she is not a reliable historian. Malingering should be ruled out." *Id.* In conclusion, Dr. Kolilis assessed a rule-out malingering diagnosis, and deferred other diagnoses. Tr. 452. He stated, "In this examiner's opinion, there is insufficient objective evidence to support any psychological impairment that would prevent her employment." *Id.*

The ALJ reiterated Dr. Kolilis' opinion in detail, and concluded that, "significant weight is given to Dr. Kolilis' opinion as he is a licensed psychologist and it is consistent with the record as a whole." Tr. 17. Cox now contends that Dr. Kolilis failed to base his opinion on objective testing, and that this supports her assertion that the ALJ erroneously gave Dr. Kolilis' opinion "significant" weight. Pl.'s Opening Br. 22. The record shows that Dr. Kolilis performed a mental status examination and also based his opinion upon behavioral observations. Tr. 449. Such procedures are a sufficient basis for a psychological opinion. Cox's challenge therefore fails.

### D.    Medical Evidence Conclusion

In summary, Cox fails to establish reversible error in the ALJ's assessment of the medical

evidence. The ALJ's findings regarding Drs. Davies, counselor Mark Schorr, and Drs. King, Guitteau, and Kolilis are based upon the record and the correct legal standards. These findings should therefore be affirmed.

## II. Lay Testimony

Cox asserts that the ALJ improperly addressed testimony submitted by her daughter, Kyenda Collins, and her cousin, Crystal Holmes. Pl.'s Opening Br. 27-28.

### A. Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(d); 416.913(d); 416.945(d); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may reject lay testimony predicated upon the testimony of a claimant found not credible. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### B. Analysis

Cox's daughter, Kyenda Collins, testified at Cox's June 30, 2009, hearing before the ALJ. Tr. 47-51. Cox' cousin, Crystal Holmes, submitted a form on May 19, 2005, and July 17, 2006. Tr. 155-62, 201-208.

#### 1. Kyenda Collins' Testimony

Collins first testified that she is eighteen and lives with Cox. Tr. 47. She stated that Cox has

12 - FINDINGS AND RECOMMENDATION

"tightness in her legs" when she walks, awakens in pain, cannot walk more than a block before requiring rest, has difficulty gripping items when cooking, and experiences spasms in her hands, causing her to drop items such as a fork. Tr. 48. Collins also stated that Cox experiences pain which may cause her to shake or cry (Tr. 50), and is bothered by pain about fifty percent of the time. Tr. 49. She can perform activities such as cleaning or restocking shelves for about a half hour without stopping, and then rests for an hour and a half. *Id.*

Cox raises her voice due to anger three or four times per week. Tr. 50-51. In response to Cox's counsel's questions, Collins finally testified that her mother "has a lot of memory loss" and will forget things Collins tells her mother about her day at school. Tr. 51.

### 2.   Crystal Holmes' Testimony

Holmes completed two third-party function report forms. Tr. 155-62, 201-08. On May 19, 2005, she wrote that Cox cares for her children and household throughout the day (Tr. 155), and performs "general motherly activities" for three children under eighteen. Tr. 156. Holmes wrote that Cox "cooks on a regular basis, work[s] regularly, and comb[s] her and her daughter's hair." *Id.* Cox awakens in pain and is unable to sleep due to discomfort. *Id.* Holmes also added that Cox is no longer able to cook daily and "cannot grip and lift" pots and pans. Tr. 156-57. Cox performs household chores such as cleaning, laundry, ironing, and sweeping, but her daughter vacuums or dusts when Cox is unable to do it. Tr. 157.

Holmes wrote that Cox participates in social activities "according to her hobbies and interest" and does various unspecified activities daily. Tr. 159. She endorsed limitations in Cox's ability to lift only, and stated that Cox can lift five to ten pounds and cannot "completely grab things," make

a fist, or throw. Tr. 160.

Holmes completed a second form on July 17, 2006. Tr. 201-08. Here she again wrote that Cox cares for her three children, and is not able to sleep due to pain. Tr. 202. Holmes described reduced cooking activities, and stated that Cox is "able to do some housework but delegates the majority of it to her children." Tr. 203. She wrote that Cox is "easily frustrated" and "lashes out at individuals, " (Tr. 204), and also experiences mood swings and "anger management issues." Tr. 206. Cox reads, watches television, plays basketball with her children, listens to music, and sings. Tr. 205. Finally, on her second form, Holmes again endorsed limitations Cox's lifting capacity, and added limitations in Cox's memory, concentration, use of her hands, and ability to get along with others. Tr. 206.

**B.    Analysis**

The ALJ rejected the testimony submitted by both Collins and Holmes because "Neither Ms. Collins nor Ms. Holmes has demonstrated any vocational expertise to support a conclusion the claimant is unable to work. There is more reliable evidence of record from examining medical professionals who are trained to evaluate impairments and their impact on functional capacity." Tr. 16.

Lay witness testimony is valuable because it is based upon the witness's observation of a claimant's functioning. *Dodrill*, 12 F.3d at 918-919. The Ninth Circuit clearly instructs that an ALJ may not reject lay testimony simply because the lay witness is not "knowledgeable in the medical and/or vocational field." *Bruce*, 557 F.3d at 1116. The ALJ's stated reasons for rejecting the testimony submitted by Collins and Holmes is inconsistent with this standard. Lay witnesses are not

expected to possess expertise, *id.*, and the ALJ's subsequent reasoning that medical sources are more "reliable" regarding unspecified observations also contravenes this standard.

This court may find an ALJ's rejection of lay testimony harmless only when it can "confidently conclude" that "no reasonable ALJ, when fully crediting that testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Collins stated that Cox requires rest after approximately a half hour of activity (Tr. 49), and Holmes stated that Cox can lift only five to ten pounds. Tr. 160. These limitations are inconsistent with the ALJ's RFC assessment restricting Cox to light work. Tr. 14. This court therefore cannot "confidently conclude" that the ALJ's failure to properly assess this testimony was harmless. The ALJ's findings regarding the lay testimony should not be affirmed.

## III.    RFC Assessment

Cox claims the ALJ erroneously evaluated his RFC under the Commissioner's Administrative Rulings. Pl.'s Opening Br. 28.

### A.    Standards

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make narrative findings in construing a claimant's RFC. *Id.* at *2, 7. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

///

15 - FINDINGS AND RECOMMENDATION

**B.    Analysis**

### 1.    Medical Evidence

Cox's argument under SSR 96-8p first points to the medical evidence discussed above. Pl.'s Opening Br. 29. As explained above, Cox fails to establish reversible error regarding the ALJ's assessment of that evidence. *Supra*, 5-12. Cox cannot now rely upon the Commissioner's Administrative Ruling as a back door to again attack the ALJ's analysis, and this court rejects his request that this it reevaluate the medical evidence under SSR 96-8p.

### 2.    Concentration, Persistence, and Pace

Cox also asserts that the ALJ's decision violates instructions contained SSR 96-8p regarding her alleged limitations in concentration, persistence, and pace. Pl.'s Opening Br. 29. She specifically asserts that the ALJ found that she had "moderate" limitations in concentration, persistence, and pace, that such limitations were not contained in her RFC assessment, and such an omission is erroneous. *Id.*

Cox provides no citation to the Commissioner's Administrative Ruling supporting her assertion. *Id.* SSR 96-8p instructs the ALJ to consider a claimant's "nonexertional capacity" in construing the claimant's RFC. SSR 96-8p at *6 (*available at* 1996 WL 374184). The Ninth Circuit has determined that a restriction to "simple" tasks is consistent with a "moderate" limitation in concentration, persistence, and pace. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74. Cox's reliance upon out-of-circuit authorities is misplaced and her argument should be rejected.

### 3.    Medication Side Effects

Finally, Cox asserts that the ALJ should have considered her medication side effects under

SSR 96-8p. Pl.'s Opening Br. 31. An ALJ considers a claimant's symptoms relating to reported medication side effects in the course of his credibility determination. *Smolen v. Chater*, 80 F.3d 1279, 1284 (9th Cir. 1996). As noted, the ALJ found Cox not credible (Tr. 21) and the Cox does not challenge this finding. Cox's assertion that the ALJ erred in discussing her symptoms relating to medication side effects under SSR 96-8p therefore should not be sustained.

In summary, Cox fails to show that the ALJ inappropriately evaluated her RFC under SSR 96-8p.

## IV.    Step Five

Finally, Cox asserts that the ALJ erred at step five in the sequential proceedings. Pl.'s Opening Br. 32. She specifically asserts that the ALJ made erroneous findings regarding work available in the national economy.

### A.    Standards: Step Five

After an ALJ determines that a claimant cannot perform past relevant work at step four, the ALJ must determine if the claimant can perform work in the national economy at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here the ALJ may draw upon the testimony of a vocational expert, and his questions to the vocational expert must include limitations that are properly supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). A vocational expert's recognized expertise provides the foundation for his testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ may take administrative notice of any information the vocational expert provides, including testimony addressing the number of available jobs. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

17 - FINDINGS AND RECOMMENDATION

Case 1:09-cv-01415-CL  Document 29  Filed 10/26/11  Page 18 of 21


## B.    Analysis

Cox's indicated authorities are either irrelevant to social security disability determinations or not binding upon this court. Pl.'s Opening Br. 32-34. She therefore presently fails to establish legal authority for her submission that the vocational expert failed to properly address work in the national economy under controlling Ninth Circuit authorities. The ALJ may rely upon a vocational expert's testimony addressing the number of available jobs, *Johnso*n, 60 F.3d at 1435. Cox's assertion that the ALJ erred in this regard should not be sustained.

However, the ALJ's questions to the vocational expert erroneously omitted limitations expressed in the lay testimony. Therefore, the ALJ's step five findings should not be affirmed. The effects of this error are addressed below.

## V.    Remand

The ALJ erroneously evaluated the lay testimony submitted by Collins and Holmes. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*cert. denied*, 531 US 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F2d at 348). The reviewing court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ analysis of the lay testimony is erroneous for the reasons established above. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

However, it is not clear from the record that crediting the omitted evidence establishes that Cox is disabled at step five in the sequential proceedings. Holmes described Cox's ability to care for three children, and perform other activities of daily living. Tr. 155-56, 205. She also stated that Cox "work[s] regularly." Tr. 156. This testimony is inconsistent with a finding of disability. Further, Cox makes no argument specifically pertaining to the improperly omitted evidence discussed above and any subsequent finding that she cannot perform work in the national economy. Pl.'s Opening Br. 28; Pl.'s Reply Br. 10-11. Finally, Cox's assertion of disability at step five in the sequential proceeding points to no specific work-related restrictions articulated by either lay witness and addressed by the vocational expert. Pl.'s Opening Br. 32; Pl.'s Reply Br. 14.

19 - FINDINGS AND RECOMMENDATION

Thus, outstanding issues must be resolved before a determination that award of benefits is appropriate. In such instances, the court declines to credit the improperly omitted testimony. *Luna*, 623 F.3d at 1035. The matter must be remanded for further proceedings to address the lay testimony, and any work further work activity performed by Cox. If necessary, the ALJ must then revise his RFC determination. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Cox did not suffer from disability, and is not entitled to benefits under Titles II and XVI of the Social Security Act, is based upon correct legal standards and supported by substantial evidence, except as noted in the analysis pertaining to the lay testimony. The Commissioner's decision should be reversed and remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) to properly address the lay testimony.

## SCHEDULING ORDER

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by November 14, 2011. If objections are filed, any response to the objections are due by December 1, 2011*, *see* Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

IT IS SO ORDERED.

DATED this __26__ day of October, 2011.

Mark D. Clarke
United States Magistrate Judge

21 - FINDINGS AND RECOMMENDATION